UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.M.O., A MINOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>Defendants. | Case No. 19-cv-02992-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 85 |

Before the Court is a motion for summary judgment filed by defendants County of San Mateo ("the County"), Deputy Alyssa Lorenzatti, Deputy DeMartini, Deputy Joshua Wang, Deputy Bryan Watt and Sergeant Weidner ("Individual Defendants") (collectively, "Defendants"). Dkt. No. 85. On August 27, 2021, the Court heard oral argument on Defendants' motion. For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment.

## BACKGROUND

### I. Factual Background[1]

This case arises from an October 3, 2017 incident involving Chinedu Okobi and Individual Defendants Joshua Wang, Alyzza Lorenzatti, John DeMartini, Bryan Watt, and Sergeant Weidner.

At approximately 12:59 p.m., Deputy Wang was on patrol in a marked police vehicle and saw Mr. Okobi cross Millwood Drive in San Mateo County. Deputy Wang drove up to Mr. Okobi's

---

[1] Unless otherwise noted, the facts in the background section are taken from video footage from John DeMartini, Alyssa Lorenzatti, Joshua Wang, Bryan Watt, David Weidner, Jason Fries, and Irfan Zaidi. *See* Dkt. No. 87 (Manually filed exhibits to John DeMartini, Jason Fries, Brenda Lewis, Alyssa Lorenzatti, Joshua Want, Bryan Watt, David Weidner, and Irfan Zaidi).

location on the sidewalk and stated "Hey, hold up a minute. Hold up a minute. Hey, stop." Mr. Okobi did not respond and crossed the street. Deputy Wang radioed dispatch and requested emergency assistance from all available police members to come as quickly as possible. Dkt. No. 85-12 (Wang Decl.) at ¶ 24. Deputy Wang followed Mr. Okobi, driving into oncoming traffic. At approximately 1:02 p.m., Deputy Wang exited his vehicle, approached Mr. Okobi and said, "Let's go over here and talk on the sidewalk." Mr. Okobi did not respond and crossed the street. Deputy Wang entered his vehicle and followed Mr. Okobi, driving into and blocking oncoming traffic.

At approximately 1:04 p.m., Deputy Wang parked his vehicle at Mr. Okobi's location while two additional police vehicles arrived. Deputy Lorenzatti, on foot, approached Mr. Okobi on the sidewalk and attempted to grab Mr. Okobi's left arm. As Mr. Okobi walked past Deputy Lorenzatti, other deputies grabbed Mr. Okobi's arm and shirt. Mr. Okobi placed his right hand in the air and Deputy Lorenzatti yelled, "stop resisting!"

Deputy Wang reached for his taser and said, "You're going to get tased. Get on the ground, now." The deputies attempted to grab Mr. Okobi as he ran away. Deputy Wang then tased Mr. Okobi, causing Mr. Okobi to fall on the ground. Deputy Wang repeatedly ordered Mr. Okobi to "roll over" as other deputies attempted to grab Mr. Okobi's arms and legs. Mr. Okobi remained on the ground, surrounded by five deputies.

Deputy Wang tased Mr. Okobi a second time. Mr. Okobi screamed, remained on the ground, put his hands in the air, and asked, "What did I do?" The deputies repeatedly commanded Mr. Okobi to roll over on his stomach. Deputy Wang said, "I will tase you again if you don't role over on your stomach." Approximately two seconds later, while Mr. Okobi remained on the ground, Deputy Wang tased Mr. Okobi a third time.

The deputies continued to command Mr. Okobi to roll on his stomach. With his back still on the ground, Mr. Okobi yelled, "Get them off me!" After the third tase, the deputies reached for Mr. Okobi's arms and told Mr. Okobi to relax and said they are "trying to get them off you." Mr. Okobi had his hands up in the air and said "What did I do? I'm lost. Spread the word of God." The deputies commanded Mr. Okobi to roll on his stomach. After twenty seconds, at approximately 1:05 p.m., Mr. Okobi stood up. Deputy Wang tased Mr. Okobi a fourth time.

2

1   Mr. Okobi fell on the ground, sat up, held his hands up in the air, and yelled, "Somebody
2   help me!" Surrounded by the five deputies, Mr. Okobi stood up again. Deputy Wang tased Mr.
3   Okobi a fifth time. After being tased for a fifth time, Mr. Okobi sat up and yelled, "Somebody help
4   me!" At approximately 1:05 p.m., Deputy Wang radioed in, "Can you roll medics?"

5   As Mr. Okobi attempted to stand up, Deputy Wang tased Mr. Okobi a sixth time. Mr. Okobi
6   ran away from the deputies. The deputies followed Mr. Okobi and Mr. Okobi turned around to face
7   the deputies. Deputy Wang deployed his taser for the seventh time and then hit Mr. Okobi with a
8   baton. A physical altercation ensued between Mr. Okobi and at least five deputies.

9   At approximately 1:06 p.m., Mr. Okobi fell to the ground and the deputies "dog-piled" and
10  placed their weight on Mr. Okobi. Sergeant Weidner repeatedly ordered the deputies to "Stay on
11  him," "Get on," "Stay on top of him." Sergeant Weidner also told the deputies "Watch out, he's
12  bleeding." Approximately thirty seconds after Mr. Okobi was on the ground and restrained by
13  deputies, Deputy Wang pepper sprayed Mr. Okobi. The deputies were affected by the pepper spray.
14  Sergeant Weidner told the deputies to "settle down," "stay on the fight," "give me the handcuffs.
15  Get on there," "stay in this," and "stay in it." The deputies continued to stay on Mr. Okobi. At
16  approximately 1:07 p.m., Sergeant Weidner said "Be Careful. Watch for positional asphyxiation"
17  and radioed in, "We need medics, Code 3." The deputies continued to stay on Mr. Okobi. At
18  approximately 1:09 p.m., a deputy asked, "Is he still breathing?" and Sergeant Weidner told the
19  deputies to "roll him on his side" and "sit him up." Thirty seconds later, Mr. Okobi appeared to be
20  leaning on on a deputy's legs. The deputies checked Mr. Okobi's vitals and pulse. At 1:10 p.m.,
21  Sergeant Weidner radioed in, units need to "shut down" the intersection and "we have a crime
22  scene." At 1:13 p.m., medics arrived on the scene.

23  Mr. Okobi died on the way to the hospital. Dkt. No. 85-11, Ex. 11. According to Mr.
24  Okobi's autopsy, Mr. Okobi's cause of death was "Cardiac arrest following physical exertion,
25  physical restraint, and recent electro-muscular disruption." Dkt. No. 88-3, Ex. 3 (Okobi Autopsy
26  Report).

## II. Procedural Background

On May 30, 2019, plaintiff C.M.O., a minor, on behalf of her father, Chinedu Okobi, filed the instant action against Defendants.[2] Dkt. No. 1. On February 14, 2021, plaintiff filed an amended complaint, alleging the following causes of action against Defendants: (1) unreasonable search and seizure – detention and arrest under 42 U.S.C. § 1983; (2) excessive force and denial of medical care under 42 U.S.C. § 1983; (3) interference with familial relationship and freedom of association under 42 U.S.C. § 1983; (4) municipal liability for unconstitutional custom or policy under 42 U.S.C. § 1983; (5) false imprisonment – wrongful death under California Government Code § 815.2(a); (6) Battery under California Government Code § 820; and (7) negligence under California Government Code § 820. Dkt. No. 41.

On July 23, 2021, Defendants filed a motion for summary judgment. Dkt. No. 85. On August 6, 2021, Plaintiff filed an opposition. On August 13, 2021, Defendants filed a reply. Dkt. No. 89. On August 27, 2021, the Court heard oral argument on Defendants' motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] Plaintiff C.M.O. filed by and through her guardian ad litem, Mi'trease Johnson.

4

The Court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id*. at 631.

**DISCUSSION**

The County and Individual Defendants move for summary judgment on all of plaintiff's claims.

**I.     Unreasonable Search and Seizure and Excessive Force Claims**

Defendants move for summary judgment on plaintiff's first and second causes of action, arguing Individual Defendants had probable cause to stop Mr. Okobi for jaywalking, used reasonable force, and appropriately requested medical assistance. Dkt. No. 85 at 21-33. Plaintiff argues Individual Defendants' use of force was excessive and that they failed to timely request medical assistance. Dkt. No. 88 at 12-27.

The Court finds factual disputes exist as to the reasonableness of the Individual Defendants' actions during the incident.[3] Factual disputes exist as to whether Deputy Wang tasing Mr. Okobi seven times, striking Mr. Okobi with a baton, and pepper spraying Mr. Okobi constituted excessive force given that Deputy Wang stopped Mr. Okobi for jaywalking; whether Mr. Okobi posed an immediate threat to the deputies or others; whether Mr. Okobi actively resisted or attempted to attempted to evade the deputies; when Mr. Okobi was injured during the altercation; and whether deputies promptly requested medical help. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (explaining Fourth Amendment requires officers to "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended

---

[3] For the same reasons, the Court **DENIES** defendants' motion for summary judgment on plaintiff's punitive damages claim.

5

1    by either promptly summoning the necessary medical help or by taking the injured detainee to a
2    hospital.") (internal citations and quotations omitted); *Beier v. City of Lewiston*, 354 F.3d 1058,
3    1064 (9th Cir. 2004) ("To evaluate an excessive force claim, we consider 'the severity of the crime
4    at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and
5    whether he is actively resisting arrest or attempting to evade arrest by flight.'") (internal citation
6    omitted). That Deputy Wang had probable cause to believe Mr. Okobi was jaywalking does not
7    automatically justify Individual Defendants' use of force. *See Beier*, 354 F.3d at 1064
8    ("[E]stablishing a lack of probable cause to make an arrest does not establish an excessive force
9    claim, and vice-versa."). The video footage of the incident is subject to varying interpretation and
10   reasonable minds can differ on whether Individual Defendants used excessive force or denied Mr.
11   Okobi medical care. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell
12   two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury
13   could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion
14   for summary judgment."); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("[S]ummary
15   judgment . . . in excessive force cases should be granted sparingly. This is because police misconduct
16   cases almost always turn on a jury's credibility determinations."); *Scott v. Henrich*, 39 F.3d 912,
17   915 (9th Cir. 1994) (stating the Court "may not simply accept what may be a self-serving account"
18   but "must also look at the circumstantial evidence that, if believed, would tend to discredit [their]
19   story.")

20   A sample of other disputes of fact in need of resolution includes: Did Deputy Wang escalate
21   the incident by calling all available police to come as quickly as possible in response to Mr. Okobi
22   jaywalking? Did the Individual Defendants self-create an emergency? Did Individual Defendants
23   know or should they have known Mr. Okobi was experiencing a mental health crisis? Did Mr.
24   Okobi actively resist the deputies during the altercation? Was there a reasonable basis for each of
25   the seven times Deputy Wang tased Mr. Okobi? Was it reasonable for Individual Defendants to
26   "dog-pile" and push Mr. Okobi to the ground after Mr. Okobi was tased seven times? Should
27   Individual Defendants have requested medical assistance any time before Deputy Wang tased Mr.
28   Okobi? Should Individual Defendants have requested medical care when Mr. Okobi was lying on

6

the ground, saying "Get them off of me. What did I do? I'm lost. Spread the word of God."? These disputed facts go to whether the Individual Defendants had probable cause or reasonable suspicion at each stage of the incident, whether their use of force was reasonable, and whether they denied Mr. Okobi reasonable medical care.

Defendants also argue Individual Defendants are entitled to qualified immunity. Dkt. No. 85 at 36-38. Plaintiff argues qualified immunity in not warranted because Mr. Okobi did not pose a threat to the officers. Dkt. No. 88 at 30-35.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 U.S. 2088, 2093 (2012). The application of qualified immunity depends upon: (1) whether the government actor's conduct violated a constitutional right; and (2) whether the unlawfulness of the conduct was apparent under existing law. *Saucier v. Katz*, 533 U.S. 194, 201, (2001).

The Court finds resolution of whether defendants are entitled to qualified immunity requires determination of several factual disputes. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."). A jury is well-suited to resolve the factual allegations relating to plaintiff's claims. *See Ruiz v. Sawaya*, No. 11-CV-03126-JST (PR), 2013 WL 5665404, at *4 (N.D. Cal. Oct. 15, 2013) ("[E]valuation of plaintiff's excessive force claim depends principally on credibility determinations and the drawing of factual inferences from circumstantial evidence, both of which are the traditional functions of the jury). Accordingly, factual disputes preclude a finding of qualified immunity. *See Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th Cir. 2003) ("appellate review is generally limited to issues of law . . . and 'does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact.'") (internal citation omitted); *Loyce Amos Moore & Cleo Davis Moore v. City and County of San Francisco*, No. 20-17494, D.C. No. 3:18-cv-634-SI (9th Cir. Mar. 11, 2021) (denying motion to stay district court proceedings pending appeal where district court denied summary

judgment and qualified immunity based on issues of fact).

Therefore, Defendants' motion for summary judgment is **DENIED** for plaintiff's first and second causes of action.

## II.     Interference with Familial Relationship and Freedom of Association Claims

Defendants argue there is no evidence Individual Defendants deliberated to harm Mr. Okobi or evidence Individual Defendants acted with a purpose to harm Mr. Okobi. Dkt. No. 85 at 34-35. Plaintiff argues Individual Defendants' purpose to harm Mr. Okobi was retribution for Deputy Wang allegedly being struck after a stop that was allegedly the result of racial profiling. Dkt. No. 88 at 28-29.

"The standard of culpability for a due process right to familial association claim" is whether the officer's conduct "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (internal citation and quotation marks omitted). To show that an officer's conduct "shocks the conscience," a plaintiff must demonstrate that the officer "acted with deliberate indifference," or with a "purpose to harm . . . that was unrelated to legitimate law enforcement objectives," which is a "more demanding showing." *Id*. at 1137. The deliberate indifference standard, "[a]s the very term 'deliberate indifference' implies," applies "only when actual deliberation is practical." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "A court may determine at summary judgment whether the officer had time to deliberate (such that the deliberate indifference standard applies) or instead had to make a snap judgment because he found himself in a quickly escalating situation (such that the purpose to harm standard applies), so long as the undisputed facts point to one standard or the other." *C.E.W. v. City of Hayward*, No. 13-CV-04516-LB, 2015 WL 1926289, at *13 (N.D. Cal. Apr. 27, 2015) (internal citation and quotations omitted).

The Court finds factual disputes exist as to whether the deputies had time to deliberate or had to make a snap judgment in a quickly escalating situation and whether the Individual

8

Defendants' actions shocked the conscience.[4]  *See C.E.W.,* 2015 WL 1926289 at *13 ("the determination of which situation [the officer] actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards."). These disputes include: Whether Individual Defendants had time to deliberate while Deputy Wang followed Mr. Okobi? Whether Individual Defendants had time to deliberate as Individual Defendants watched Mr. Okobi lie on the ground with his hand in the air while Deputy Wang tased Mr. Okobi? Whether Deputy Wang's decisions to tase Mr. Okobi while Mr. Okobi was on the ground with his hands in the air constituted deliberate indifference or a purpose to harm Mr. Okobi? Whether Deputy Wang's tasing of Mr. Okobi after Mr. Okobi said "Get them off of me. What did I do? I'm lost. Spread the word of God." constituted deliberate indifference or a purpose to harm? Whether Deputy Wang's pepper spraying of Mr. Okobi while other deputies were restraining Mr. Okobi to the ground constituted deliberate indifference or a purpose to harm Mr. Okobi?  Whether Sergeant Weidner's repeated commands to Individual Defendants to "stay on" Mr. Okobi, "settle down," "stay on the fight," "stay in this," and "stay in it" constituted either deliberate indifference or a purpose to harm Mr. Okobi? Whether Individual Defendants' adherence to Sergeant Weidner's commands to "stay in it" and "stay in the fight" before and after Mr. Okobi was bleeding constituted either deliberate indifference or a purpose to harm Mr. Okobi? *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) ([A] use of force might be so grossly and unreasonably excessive that it alone could evidence a subjective purpose to harm."). These questions go to whether deliberation was practical or if Individual Defendants had any ulterior motive for use of force and whether Individual Defendants' conduct "shocks the conscience." *See Foster v. City of Indio,* 908 F.3d 1204, 1211 (9th Cir. 2018) ("A police officer lacks such legitimate law enforcement objectives when the officer "had any ulterior motives for using force against" the suspect . . . such as to bully a suspect or get even . . . or when an officer uses force against a clearly harmless or subdued suspect.") (internal quotations and citations omitted).

Defendants argue Individual Defendants are entitled to qualified immunity for plaintiff's

---

[4] For the same reasons, the Court **DENIES** defendants' motion for summary judgment on plaintiff's punitive damages claim.

9

1  third cause of actions. For the same reasons stated above, the Court finds resolution of whether
2  defendants are entitled to qualified immunity requires determination of several factual disputes. *See*
3  *Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th Cir. 2003) ("appellate review is generally limited
4  to issues of law . . . and 'does not extend to claims in which the determination of qualified immunity
5  depends on disputed issues of material fact.'") (internal citation omitted); *Loyce Amos Moore &*
6  *Cleo Davis Moore v. City and County of San Francisco*, No. 20-17494, D.C. No. 3:18-cv-634-SI
7  (9th Cir. Mar. 11, 2021) (denying motion to stay district court proceedings pending appeal where
8  district court denied summary judgment and qualified immunity based on issues of fact).
9        Accordingly, Defendants' motion for summary judgment is **DENIED** for plaintiff's third cause
10  of action.

### III. *Monell* Claims

13  Defendants argue plaintiff's *Monell* claims are unsupported by evidence and plaintiff has
14  failed to show that an unlawful policy, practice, or custom from the County was the moving force
15  behind any constitutional violation. Dkt. No. 85 at 38-39. Plaintiff argues the County has no written
16  policy to show Defendants were trained to avoid compressing a prone person's diaphragm or how
17  to avoid positional asphyxiation. Dkt. No. 88 at 36-38.
18        Municipalities are "persons" and may be liable for causing a constitutional deprivation.
19  *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 (1978). However, "a municipality may not
20  be sued under § 1983 solely because an injury was inflicted by its employees or agents . . . [but]
21  only when execution of a government's policy or custom inflicts the injury that the municipality as
22  an entity is responsible." *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). A
23  policy may be one of inaction. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "To impose
24  liability against a county for its failure to act, a plaintiff must show: (1) that a county employee
25  violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount
26  to deliberate indifference; and (3) that these customs or policies were the moving force behind the
27  employee's violation of constitutional rights." *Long*, 442 F.3d at 1186.
28        Here, plaintiff relies on the deposition of Sergeant Jason Reed, the County's designated

1  person as most knowledgeable about the County's policies, to argue Defendants were not
2  specifically trained that obese persons were at higher risk to suffer from positional asphyxiation.
3  Dkt. No. 88 at 37-38 (citing Reed Decl. at 11-12). However, a complete reading of Reed's
4  deposition reveals defendants were trained on the effect of pressure on obese persons and positional
5  asphyxiation.[5] *Cf. Kirkpatrick v. City of Washoe,* 843 F.3d 784, 794-97 (9th Cir. 2016) (affirming
6  summary judgment where defendants testified they were "wholly unfamiliar" with policy).
7  Although Plaintiff argues Defendant Lorenzatti testified she had never been trained on positional
8  asphyxiation and did not consider the concept during the incident, "evidence of the failure to train
9  a single officer is insufficient to establish a municipality's deliberate policy." *See Blackenhorn v.*
10 *City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007). Moreover, plaintiff fails to point to any evidence
11 indicating a pattern of similar incidents. *See Connick v. Thompson*, 563 U.S. 51, 72 (2011) ("a
12 pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to
13 demonstrate deliberate indifference"). Accordingly, the Court finds Plaintiff failed to provide
14 sufficient evidence to support plaintiff's *Monell* claims. *See Price v. Sery,* 513 F.3d 962, 973 (9th
15 Cir. 2008) (affirming district court's grant of summary judgment on *Monell* claim where plaintiff
16 "points to nothing in the record . . . that evinces the deliberate indifference. . . [required] for a free-
17 standing failure-to-train claim to succeed."); *Sommers v. City of Santa Clara*, 17-cv-4469, 2021 WL
18 326931 at *10 (N.D. Cal. Feb. 1, 2021) (granting summary judgment on *Monell* claim where
19 plaintiff "has no evidence establishing a policy, custom, or practice or a lack of one that establishes
20 deliberate indifference").

21 Defendants' motion for summary judgment is **GRANTED** for plaintiff's fourth cause of
22 action.

---

[5] *See* Dkt. No. 88, Ex 2 (Reed Decl.) at 12:11-14 (defendants trained to consider criteria, depending on the situation, when obese person is involved); 13:5-13 (defendants trained that applying pressure to a prone obese person has higher risks of impairing that person's respiration or causing positional asphyxiation); 13:16-21 (defendants trained that obese people are at a higher risk of suffering from positional asphyxiation).

**IV. State Claims (False Imprisonment, Battery, and Negligence)**

Defendants argue the Court should grant summary judgment on plaintiff's fifth, sixth and seventh causes of action because the Individual Defendants acted reasonably. Dkt. No. 85 at 39.

As discussed above, the Court finds resolution of whether Individual Defendants' actions were reasonable requires resolution of several factual disputes. *See supra* Section I. Summary judgment is denied.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** summary judgment on plaintiff's first, second, third, fifth, sixth, and seventh causes of action and **GRANTS** summary judgment on plaintiff's fourth cause of action. The Court **DENIES** summary judgment on plaintiff's punitive claims.

**IT IS SO ORDERED**.

Dated: September 2, 2021

SUSAN ILLSTON
United States District Judge